UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMITERIA ALEGRIA,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                   Case No. 1:06-CV-164

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 54 years of age at the time of the ALJ's decision. (Tr. 15). She successfully completed high school and worked previously as an assembler. (Tr. 15, 84, 89, 104-10).

Plaintiff applied for benefits on January 13, 2004, alleging that she had been disabled since February 4, 2002, due to shoulder pain, knee pain, and diabetes. (Tr. 64-66, 83). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-63). On September 16, 2005, Plaintiff appeared before ALJ E. James Gildea, with testimony being offered by Plaintiff and vocational expert, Randall Nelson. (Tr. 570-606). In a written decision dated December 21, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 14-24). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

On May 13, 1999, Plaintiff fell at work, injuring her right shoulder. (Tr. 152). X-rays of Plaintiff's right shoulder, taken on June 17, 1999, revealed "a comminuted, but nondisplaced fracture of the humeral head and proximal humerus." (Tr. 207). There was no evidence of

3

dislocation and the acromioclavicular joint was preserved. *Id.* On April 18, 2000, Dr. Kim Eastman performed arthroscopic surgery to repair Plaintiff's right shoulder. (Tr. 135-36).

On May 27, 2000, Plaintiff was involved in an automobile accident in which she injured her left knee. (Tr. 214). A CT scan of Plaintiff's left knee revealed an undisplaced fracture of the medial tibial plateau. (Tr. 227). Plaintiff's femur and patella were "unremarkable." *Id.*

On October 25, 2000, Plaintiff participated in an MRI examination of her left knee, the results of which revealed that Plaintiff's tibial plateau fracture was "healing." (Tr. 292). There was no evidence of a meniscal tear and the cruciate and collateral ligaments were intact. *Id.*

On October 2, 2001, Dr. Eastman performed a second surgical procedure on Plaintiff's right shoulder to repair a rotator cuff tear. (Tr. 138-39).

On February 6, 2002, Plaintiff was examined by Dr. Eastman. (Tr. 488). Plaintiff reported that she was experiencing left knee pain which radiated into her lower back. Plaintiff exhibited no evidence of muscle weakness and straight leg raising was negative. The doctor observed no evidence of abnormal warmth or swelling. The ligaments in Plaintiff's knee were intact and meniscal testing was negative. *Id.*

On February 14, 2002, Plaintiff participated in an MRI examination of her left knee, the results of which revealed the following:

> Small joint effusion. Loss of some articular cartilage in the medical compartment. Small amount of subchondral sclerosis and edema in the tibial plateau.

(Tr. 132).

On February 28, 2002, Plaintiff was examined by Dr. Evelyn Navarro. (Tr. 372-73). Plaintiff reported that she was experiencing left knee pain which radiated down her left leg. (Tr.

4

372). Plaintiff reported that she "can barely walk" and experienced "a lot" of pain whenever she bent or straightened her left knee. An examination of Plaintiff's left knee revealed "mild" crepitation and tenderness. *Id.* The doctor observed no evidence of lower extremity weakness. (Tr. 373). Straight leg raising was negative and there was no evidence that Plaintiff was experiencing radicular pain. Plaintiff also participated in an EMG examination, the results of which revealed no evidence of peripheral, segmental, or compression neuropathy. There was likewise no evidence of denervation.[1] *Id.*

On May 16, 2002, Dr. Eastman performed arthoscopic surgery on Plaintiff's left knee. (Tr. 501-02). A July 31, 2002 examination revealed that Plaintiff was experiencing only "mild discomfort" in her left knee. (Tr. 493). Dr. Eastman reported that Plaintiff was able to perform "light duty" work activities subject to the following restrictions: (1) no climbing, squatting, crawling, or repetitive bending at the knee; (2) no prolonged standing or walking; (3) no lifting more than 10 pounds; and (4) no use of her right arm above shoulder level. (Tr. 519). When examined on November 20, 2002, Plaintiff reported that she experiences "some aching discomfort if she uses [her left knee] a lot." (Tr. 493-94).

In May 2003, Plaintiff was referred to a vocational assistance program, the purpose of which was to help Plaintiff locate work which was consistent with her physical limitations. (Tr. 149). Vocational specialist Sandra Cordingly was assigned to work with Plaintiff. *Id.* During a June 26, 2003 meeting with Cordingly, Plaintiff reported that on a typical day she walks her dog, prepares breakfast, visits family members, goes shopping, and cares for her seven grandchildren. (Tr. 152-

---

[1] Denervation refers to the removal of a nerve or nerves from a part. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* D-41 (Matthew Bender) (1996).

53). Plaintiff reported that she also preforms various household duties. (Tr. 152). Cordingly concluded that Plaintiff "is a good candidate for light assembly/light production." (Tr. 154).

On June 18, 2003, Dr. Eastman reported that Plaintiff was capable of performing work activities subject to the following restrictions: (1) no lifting more than 10 pounds with her right arm; and (2) she can only use her right arm below shoulder level. (Tr. 495).

In a report dated July 11, 2003, Cordingly reported that Plaintiff had failed to participate in the vocational assistance program's job search activities. (Tr. 161-62). Specifically, Cordingly noted that Plaintiff contacted one potential employer by telephone, after which Plaintiff was asked to report in person "which she did not do." (Tr. 162). Another employer asked Plaintiff to submit a copy of her resume, but she declined to do so. Plaintiff also failed to pursue any job leads that she was given, including several jobs that paid more than ten dollars per hour and included benefits. *Id.*

On October 1, 2003, Plaintiff participated in a consultive examination conducted by Dr. Emmanuel Obianwu. (Tr. 191-98). An examination of Plaintiff's right shoulder revealed "questionable" tightness of the capsular tissues and "some mild" capsulitis. (Tr. 195). The doctor also observed tenderness over the area of insertion of the rotator cuff into the right proximal humerus. Plaintiff exhibited diminished range of motion in her right shoulder. *Id.* Dr. Obianwu diagnosed Plaintiff with "mild" rotator cuff tendinitis of the right should and "mild" adhesive capsulitis of the right shoulder. (Tr. 196). The doctor concluded that Plaintiff could perform work activities subject to the following limitations: (1) no repetitive use of her right arm at or above shoulder level; and (2) no lifting more than 10 pounds with the right arm alone. (Tr. 197).

On October 2, 2003, Cordingly again reported that Plaintiff was not complying with the requirements of the vocational assistance program. (Tr. 174-77). Specifically, Cordingly noted that Plaintiff was offering to others the job leads she was provided through the program. (Tr. 174-75). A November 11, 2003 report reveals similar behavior by Plaintiff. (Tr. 178-81).

On December 9, 2003, Cordingly prepared a report regarding Plaintiff's participation in the vocational assistance program. (Tr. 182-84). Cordingly noted Plaintiff's continued failure to comply with the program's requirements. (Tr. 182-83). Cordingly also reported that she had spoken with two employers with whom Plaintiff had recently interviewed, both of whom reported that Plaintiff "was not interested in either the position or working." (Tr. 183). As a result of her "limited cooperation with vocational services," Plaintiff was terminated from the vocational assistance program. (Tr. 182-83).

On April 8, 2004, Plaintiff was examined by Dr. James Wessinger. (Tr. 447-51). Plaintiff reported that she was experiencing "pain with basically all motion" of her right shoulder. (Tr. 449). Plaintiff exhibited "smooth scapulothoracic motion" with no evidence of atrophy or adhesive capsulitis. (Tr. 450-51). Impingement testing and labral testing were both negative. (Tr. 449). Plaintiff was unable to raise her right arm "all the way up overhead," but she did exhibit "a good functional range of motion for most tasks." (Tr. 427, 449). X-rays of Plaintiff's right shoulder revealed no evidence of arthritis or shoulder joint abnormality. (Tr. 428-29, 450). The doctor observed that Plaintiff's previous fracture was "well-healed." (Tr. 428). Dr. Wessinger concluded that Plaintiff was "certainly" employable and capable of performing her previous assembly work, as such did not require her to lift items above shoulder level. (Tr. 430, 451).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) rotator cuff syndrome; (2) fracture of the left tibial plateau; and (3) diabetes mellitus, type II, insulin dependent. (Tr. 19). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20). The ALJ determined

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

that Plaintiff was able to perform her past relevant work as an assembler. (Tr. 22). The ALJ further determined that even if Plaintiff were unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she cannot lift more than 20 pounds at one time, but can frequently lift 10 pounds; (2) she can only occasionally climb, balance, stoop, kneel, crouch, or crawl; and (3) she cannot reach overhead or perform constant reaching with her right upper extremity. (Tr. 22). After reviewing the relevant

medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was able to perform her past relevant work as an assembler. However, the ALJ also questioned a vocational expert to determine whether there existed any additional jobs which Plaintiff could perform despite her limitations. The vocational expert testified that there existed approximately 16,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 602-03). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (evidence that there existed 2500 jobs "within the local region" represents a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (evidence that there existed 1350-1800 jobs "in the region" of the claimant's residence represents a significant number).

a. The ALJ Properly Assessed the Medical Evidence

On July 31, 2002, Dr. Eastman reported that Plaintiff was able to perform "light duty" work activities subject to the following restrictions: (1) no climbing, squatting, crawling, or repetitive bending at the knee; (2) no prolonged standing or walking; (3) no lifting more than 10 pounds; and (4) no use of her right arm above shoulder level. (Tr. 519). Plaintiff asserts that the ALJ erred by failing to incorporate into his RFC determination the limitation that Plaintiff cannot perform prolonged standing or walking.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical

opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

As Defendant correctly observes, Dr. Eastman subsequently eliminated the restriction that Plaintiff could not engage in prolonged walking or standing. On June 18, 2003, Dr. Eastman reported that Plaintiff was capable of performing work activities subject to the following restrictions: (1) no lifting more than 10 pounds with her right arm; and (2) she can only use her right arm below shoulder level. (Tr. 495). When deposed on April 16, 2004, Dr. Eastman reported that Plaintiff could perform work activities subject to the following restrictions: (1) no lifting more than 10 pounds with her right arm; (2) she cannot perform overhead activities with her right arm; and (3) she cannot perform "repetitive power activities" with her right arm. (Tr. 463).

The ALJ can hardly be faulted for failing to include in his RFC determination a limitation articulated by Dr. Eastman which the doctor subsequently found inapplicable. As the ALJ correctly noted, the objective medical evidence and Plaintiff's reported activities do not support the argument that she cannot perform prolonged walking or standing. (Tr. 21-22). Moreover, none of Plaintiff's other care providers imposed on Plaintiff restrictions which are inconsistent with the ALJ's RFC determination. In sum, substantial evidence supports the ALJ's RFC determiantion.

b. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 16,500 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

c. The ALJ Properly Applied the Medical-Vocational Guidelines

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security

regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

Plaintiff asserts that if limited to sedentary work, application of the Grids requires a finding that she is disabled. As discussed above, however, the ALJ found that Plaintiff was capable of performing a range of *light* work. That determination is supported by substantial evidence. Accordingly, the ALJ properly declined to find Plaintiff disabled pursuant to the Grids.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: June 22, 2007                    /s/ Ellen S. Carmody
                                       ELLEN S. CARMODY
                                       United States Magistrate Judge